WILLIAM MILLER AND EMANUEL H. MILLER, Co-
Partners Trading as Miller Brothers and
Company, *vs.* WILLIAM B. MANTIK.

*Special contracts and assumpsit; breach, caused by other party;*
*waiver. Estoppel; prayers. Recoupment for*
*loss from breach of contract.*

In general, where there is a special contract, recovery, if any,
must be upon the contract, rather than under a *quantum*
*meruit.* p. 281

Where there has been a breach of contract, the guilty party
can not abandon his contract and elect to stand on the com-
mon counts. p. 281

But he may be excused from the default, where his act or fail-
ure constituting the breach is occasioned by some act of the
other party; or the breach of the contract may be waived by
the party to be affected by it. p. 281

Waiver is sometimes a question of law for the Court; it is then
usually a question of estoppel. p. 281

It may be a question of fact for the jury, under instructions
from the Court, when it has to be deduced from the actions
of the parties. p. 282

A prayer asking the Court to find an estoppel from the con-
duct of the plaintiff is erroneous when the testimony is con-
flicting. p. 283

A prayer based on a theory which ignores evidence properly
in the case is erroneous. p. 283

A vendor had contracted to sell and ship the vendee a certain
quantity of canned goods, the vendee to furnish the cans.
The vendor furnished part only of the goods and then ceased
deliveries; the vendee refusing to pay for the goods deliv-
ered, the vendor brought suit in *assumpsit* on a *quantum*

*meruit,* claiming that he had stopped shipment because the defendant had refused to furnish the cans; it was *held,* that the defendant was entitled to recover against the plaintiff, by way of recoupment, the difference, if any, between the market value of the undelivered goods, at the time the plaintiff refused to make the deliveries, and the price of the goods as specified in the contract, unless the jury should find that the defendant, upon the demand of the plaintiff, failed or refused to furnish the necessary cans.                    p. 283

*Decided June 23rd, 1911.*

Appeal from the Baltimore City Court (DOBLER, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, URNER and STOCKBRIDGE, JJ.

*Myer Rosenbush* (with whom was *Benjamin Rosenheim* on the brief), for the appellants.

*B. B. Shreeves* (with whom were *John B. Keplinger* and *Jacob Meyer* on the brief), for the apppellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

On the 6th of August, 1910, the parties to this case entered into a written contract by which the appellee, the plaintiff below, agreed to sell to the appellants 2,000 cases No. 2 full standard tomatoes and 1,500 cases No. 3 full standard tomatoes. The buyer was to furnish the cases and cans for the fruit and be entitled to a specified allowance for so doing, deliveries were to be made when packed during the season of 1910, not later than October 1st. The vendor commenced deliveries upon the same day the contract was signed, and, according to the plaintiff's evidence, continued making them up to the 30th day of September, by which time the full amount of the No. 2 variety had been delivered and 735 of the 1,500 cases of No. 3.

The present suit is brought, not on the written contract, but in *assumpsit* to recover upon the basis of a *quantum meruit* for a balance due for goods actually delivered, but not paid for by the buyer. There should be but little difficulty in determining the principles controlling the case. The general rule is unquestionably that where there is a special contract, the recovery, if any, must be had by an action upon that, rather than by a suit based on a *quantum meruit*, and where there has been a breach in the contract, the party guilty of the breach can not abandon his contract and elect to stand upon the common counts. *Dougherty* v. *Gring,* 89 Md. 544; *Townes* v. *Cheney,* 114 Md. 362.

But the party guilty of the breach may be excused from that default where his act or failure, constituting the breach, is occasioned by some act of the other party, *Meyer* v. *Frenkil,* 113 Md. 45, or the breach of the contract may be waived by the party to be affected by it.

The defence to the present suit is the non-delivery of 765 cans of No. 3 tomatoes, as constituting a breach of the agreement. The non-delivery is admitted by the plaintiff, who insists, nevertheless, that this was due to the refusal of the defendants to furnish cans in accordance with the agreement, and the failure of the defendants to make the payments as stipulated. The fact that the plaintiff did make some deliveries after the time when the defendants had refused or failed to deliver cans is urged by the defendants as showing a waiver on the part of the plaintiff of any right he may have had to abandon the further performance of the contract. It is upon this theory that the first prayer of the defendants was presented, which sought to take the case from the jury. This prayer was not presented until all the evidence upon both sides was in, and that evidence abounded in contradictions upon matters of fact, from which a waiver might or might not be found to have resulted. The question of waiver may sometimes be one of law for the Court, and then it usually arises as a question of estoppel; *Spring Gar-*

*dens Co.* v. *Evans,* 9 Md. 1; *Farmers' Ins. Co.* v. *Baker,* 94 Md. 561, or it may be a question for the jury under proper instruction from the Court, where it has to be deduced from the actions of the parties, 29 *Am. & Eng. Ency.* 1108. In this case the defendants' first prayer asked the Court to find an estoppel from the conduct of the plaintiff. This was manifestly error in view of the conflicting testimony, and the prayer was properly refused.

The plaintiff in this case offered no prayers, and the defendants two. The second prayer of the defendants was as follows, and granted by the Court with a modification, that modification being the addition of the words in italics:

"Defendants' Second Prayer.—At the request of the defendants, the jury are instructed that, by the uncontradicted evidence, three facts appear:

1. That the plaintiff was required by his contract to deliver to defendants, on or before October 1st, 1910, 2,000 cases No. 2 and 1,500 cases No. 3 full standard tomatoes;

2. That plaintiff failed to deliver said quantity to defendants within the time prescribed, although requested to do so by defendants;

3. That plaintiff continued to deliver large quantities of tomatoes to defendants, after defendants' alleged refusal to supply cans to plaintiff, and accordingly, the defendants are entitled to recover against the plaintiff, by way of recoupment, as follows:

1. The difference between the market value of the undelivered tomatoes at the time plaintiff refused to make said delivery, and the price of said tomatoes as specified in said contract, if any, *unless the jury shall find that the plaintiff demanded from the defendants the necessary cans and that the defendants failed or refused to furnish said cans.*

2. That brokerage commission and cash discount specified in said contract, upon the gross value of the canned tomatoes delivered, as charged against defendants by plaintiff.

3. And if the jury shall find that 1,225 cases of the tomatoes delivered by plaintiff to defendants were not 'full standards,' but were 'seconds,' and that the market price of 'seconds'

is and was lower than the market price of 'full standards,' then the defendants are entitled to recover against the plaintiff an amount equal to the difference between the contract price of 'full standards' and the market value of 'seconds,' upon said number of cases.

And if the jury shall find that the aggregate of said amounts is equal to or greater than the sum of $396.27, which is the amount of plaintiff's claim disputed by the defendants, then their verdict must be in favor of the defendants. (*Granted as modified.*)"

This modification was excepted to by the defendants. It has been strenuously urged upon the Court that the modification made by the trial Court was inconsistent with the language of the preceding paragraph, numbered 3. We do not so regard it. To have granted the prayer in its original form would have been to send the case to the jury with an instruction which entirely ignored a large portion of the plaintiff's evidence, and such an instruction is serious error, *Jackson* v. *Jackson,* 80 Md. 192; particularly so where such instruction is the only one given the jury. In addition to this, but for the modification the case would have been presented to the jury in a form dealing with the question of waiver as purely one of law, while the effect of the language added by the judge before whom the case was tried, was to submit this question as one of fact to be passed on by the jury, and as already indicated the facts testified to made this question one peculiarly for the jury.

Four exceptions were reserved in questions of evidence, but none of them have been seriously pressd in this Court, and it is sufficient to say, that whether the action of the learned judge who heard the case was correct in each instance or not, it is not perceived how the defendants were injured as the result of any of the rulings.

*Judgment affirmed, with costs.*